UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE EX PARTE APPLICATION OF
TRANS MOUNTAIN CANADA INC.,

Applicant.

Case No. 5:26-mc-80070

**ORDER GRANTING *EX PARTE*
APPLICATION FOR AN ORDER
PURSUANT TO 28 U.S.C. § 1782**

Re: ECF No. 1

Applicant Trans Mountain Canada Inc., a Canadian corporation ("TMCI"), filed this *ex parte* application for an order pursuant to 28 U.S.C. § 1782 for discovery from Google LLC (which has its headquarters and principal offices in Mountain View, California) for TMCI's use in a foreign proceeding. ECF No. 1 ("Appl.") at 7.[1] Having considered TMCI's brief, supporting evidence, and the relevant legal authority, the Court GRANTS the application for the reasons set forth below.

I.      **BACKGROUND**

TMCI operates within the Trans Mountain group of entities and is responsible for software licensing for Trans Mountain's operations. ECF No. 1-1 ("Pangracs Decl.") ¶ 2. TMCI is a plaintiff in a case pending before Court of King's Bench of Alberta, Calgary, File No. 2501 07390 (the "Alberta Action"). Appl. at 1, 3. TMCI alleges that one of its former consultants, Brandon Kaster, breached his contractual and fiduciary obligations to TMCI when Kaster "exfiltrated" TMCI's proprietary software and source code. *Id.* at 3.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); unless otherwise noted, pinpoint citations are to the ECF-generated page numbers at the top of documents.

United States District Court
Northern District of California

On or about May 8, 2025, TMCI commenced the Alberta Action against Kaster, as well as IUVO Consulting Inc., and Tank Engine Ltd., companies affiliated with Kaster.  *Id.* at 4.  TMCI alleges that Kaster exfiltrated data and information from his TMCI developer workstation to an external Google server between at least May 30, 2024, to June 2, 2024.  "Specifically, TMCI identified a 7.4–7.5 GB outbound transfer from Kaster's TMCI developer workstation (host D2WZCNF3) (the "Workstation") via Google Chrome to Google IP address 74.125.5.198 during May 30–June 2, 2024, after which the Chrome history for that week alone was deleted."  *Id.* at 4–5; Pangracs Decl. ¶ 5.   Around October 31, 2024, TMCI terminated its agreement with Kaster.  Appl. at 5.

TMCI engaged Kroll LLC to investigate the suspected data and information exfiltration.  *Id.*; ECF No. 1-2 ("Spruill Decl.") ¶ 1.  Kroll's review confirmed Google Chrome traffic from the Workstation to a Google IP address (74.125.5.198) between May 30, 2024, and June 2, 2024.  *Id.*; Spruill Decl. ¶ 3.  Kaster's Google Chrome browser history from this timeframe was also missing.  Appl. at 5.  Kroll determined that the absence of information possibly included targeted deletion, emphasizing the need for Google's corroboration of the account and data activity.  *Id.*; Spruill Decl. ¶ 5.

TMCI seeks this Court's authorization to conduct limited discovery by serving a subpoena on Google.  Appl. at 1.  Because TMCI is in Alberta, it is unable to compel a United States-based, non-party service provider to produce the requested non-content records.  *Id.* at 5.  Thus, TMCI requires the Court's assistance to obtain site metadata from Google.  *Id.*  This data can be used to identify the receiving account(s), timestamps, IPs, user agents, device IDs, storage endpoints, and file operation metadata.  *Id.*  The proposed subpoena consists of four Requests for Production:

> **REQUEST FOR PRODUCTION NO. 1.** DOCUMENTS sufficient to show subscriber information affiliated with the GOOGLE ACCOUNTS[2], including but not limited to the name, recovery email(s), recovery phone(s), account creation date,

[2] "'GOOGLE ACCOUNTS' means any Google account(s) that uploaded to or otherwise interacted with Google endpoints receiving data from the SOURCE HOST via the SOURCE BROWSER during the RELEVANT TIMEFRAME and whose activity correlates to the DESTINATION IP."  Appl., Ex. A at 17.

associated Google Account ID (GAIA), and any other available non-content identifiers for the GOOGLE ACCOUNTS.

**REQUEST FOR PRODUCTION NO. 2.** DOCUMENTS sufficient to show the access and session information for the GOOGLE ACCOUNTS during the RELEVANT TIMEFRAME, including non-content logs for the GOOGLE ACCOUNTS during the RELEVANT TIMEFRAME sufficient to show:

    a.   Login/authentication timestamps;

    b.   Source IP addresses, ports (if logged), and geolocation metadata (if maintained);

    c.   Device/browser identifiers (e.g., user agent strings, device IDs, cookies, hashed device tokens);

    d.   Session identifiers and durations;

    e.   Two-factor prompts (if any) without disclosing codes or content.

**REQUEST FOR PRODUCTION NO. 3.** For the GOOGLE ACCOUNTS during the RELEVANT TIMEFRAME, DOCUMENTS reflecting non-content metadata sufficient to show Google Drive/Photos/Takeout or other storage activity events, including but not limited to:

    a.   Timestamps of uploads, creations, moves, renames, or shares;

    b.   File size(s) and hash(es), if maintained;

    c.   Target storage endpoint(s) (e.g., Drive root, shared drive ID, folder IDs);

    d.   Indication of whether date was uploaded from a web session, Google Takeout import, or other browser-medicated endpoint.

**REQUEST FOR PRODUCTION NO. 4.** DOCUMENTS sufficient to show the GOOGLE ingress endpoints receiving data from the DESTINATION IP during the RELEVANT TIMEFRAME, including the GOOGLE service name, endpoint label, and time-bounded session identifiers.

*Id.*, Ex. A at 18–19.

TMCI contends that Canadian courts are receptive to assistance in discovery from United States federal courts, and that it is "not seeking to circumvent the Alberta court's proof-gathering procedures." *Id.* at 11.

## II.    LEGAL STANDARD

### A.    Discovery Pursuant to 28 U.S.C. § 1782

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Section 1782 provides in part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).

The statute outlines a three-part test in deciding whether to grant a Section 1782 application: "(1) the discovery sought is from a person residing in the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an 'interested person.'" *In re Ex Parte Apple Inc.*, Case No. MISC 12-80013 JW, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012) (citation omitted). As soon as the three statutory requirements have been met, "district courts still retain discretion to decide whether to grant discovery under Section 1782." *In re Gliner*, 133 F.4th 927, 932–33 (9th Cir. 2025).

The Supreme Court provided several non-exclusive factors (the "*Intel* factors") for district courts to consider in exercising their discretion: "(1) whether the 'person from whom discovery is sought is a participant in the foreign proceeding'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) whether the discovery request is an 'attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the discovery requested is 'unduly intrusive or burdensome.'" *In re Ex Parte Apple Inc.*, 2012 WL 1570043, at *1 (quoting *Intel Corp.*, 542 U.S. at 264–65).

4

**B.** *Ex Parte* **Filing of Application**

Section 1782 petitions are regularly reviewed on an *ex parte* basis. *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976); *In re Gliner*, 133 F.4th 927, 930 n.1 (9th Cir. 2025). Orders granting Section 1782 applications typically provide only that discovery is "authorized." Meaning, the party from which discovery is requested may still raise objections and exercise due process rights by challenging the discovery authorization with a motion to quash, which mitigates any concerns about unfairness in granting the application on an *ex parte* basis. *IPCom GMBH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014) ("It is common for parties to file *ex parte* applications, as parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.") (footnote and internal quotation marks omitted).

## III.   DISCUSSION

In determining whether to grant TMCI's request, the Court first considers the three-part test under Section 1782, and next weighs the four *Intel* factors.

**A.    28 U.S.C. § 1782 Threshold Three-Part Test**

TMCI meets the requirements of the threshold three-part test. First, "the discovery sought is from a person residing in the district court to which the application is made" because TMCI seeks discovery from Google, which is principally located in Mountain View, California and therefore within the Northern District of California's jurisdiction. Appl. at 7. Second, "the discovery is for use in a proceeding before a foreign tribunal" because TMCI seeks to use the discovery it requests from Google to support TMCI's civil proceeding pending before the Court of King's Bench of Alberta, Canada. *Id.* Last, TMCI qualifies as an "interested person" because it is a party to the proceeding in Canada. *Id.* at 8. Accordingly, TMCI meets the statutory requirements of the three-part test under Section 1782. *See In re Ex Parte Apple Inc.*, 2012 WL 1570043, at *1.

**B.**    ***Intel* Factors**

After finding that the three-part test under Section 1782 has been met, the Court retains discretion to decide what discovery, if any, should be permitted. The Court weighs the four *Intel* factors to determine the scope of discovery.

**1.    Participant in a Foreign Proceeding**

The first *Intel* factor asks whether the person "from whom discovery is sought is a participant in the foreign proceeding." *Intel Corp.*, 542 U.S. at 264. If the person is a participant, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because "a foreign tribunal has jurisdiction over those appearing before it and can itself order them to produce evidence." *Id.* "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* Google is neither a party to the Alberta Action nor a Canadian company. *See* Appl. at 9. Consequently, this application is necessary for TMCI to gain access to records that it believes will show Kaster's exfiltration of TMCI's data and information. *See Thompson v. Doel*, Case No. 13-cv-80088-EJD-PSG, 2013 WL 5544607, at *2 (N.D. Cal. Oct. 7, 2013) (first *Intel* factor weighed in favor of granting Section 1782 application seeking discovery from Google because Google is not a Canadian company and is not within the Canadian tribunal's jurisdictional reach). This factor weighs in favor of granting the application.

**2.    Nature of Foreign Tribunal and Receptivity to U.S. Judicial Assistance**

The second *Intel* factor requires the Court to "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel Corp.*, 542 U.S. at 264. There is no evidence that the Alberta court would not be receptive to the discovery TMCI seeks. To the contrary, courts in this District have found that Canadian courts are typically receptive to discovery taken in the United States pursuant to Section 1782. *See, e.g., In re Al-Baldawi*, No. 22-mc-80329-EJD, 2023 WL 3603731, at *3 (N.D. Cal. May 23, 2023) ("Canadian courts have said they 'generally will be reluctant to prevent someone from gathering

United States District Court
Northern District of California

evidence extraterritorially, as its ultimate admissibility in a Canadian proceeding will be determined by the Canadian courts.'") (citation omitted); *In re Path Network, Inc.*, 703 F. Supp. 3d 1046, 1063 (N.D. Cal. Nov. 22, 2023) ("[T]he Court concludes that the nature of the Canadian Court is such that it is unlikely to object to judicial assistance from a U.S. District Court, and that the nature of the proceedings abroad favors discretionary authorization of discovery herein."). This factor weighs in favor of granting the application.

### 3.   Attempt to Circumvent Foreign Proof-Gathering Restrictions

The third *Intel* factor considers whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp.*, 542 U.S. at 264–65.  There is no evidence that TMCI is attempting to circumvent restrictions in Canada or in the United States.  TMCI has conducted an internal investigation by hiring Kroll to investigate; it also brought claims against Kaster in Canada.  *See* Appl. at 11; *see also In re Path Network, Inc.*, 703 F. Supp. 3d at 1064 (discovery request was proper as applicant demonstrated diligence when trying to obtain records and information).  Rather, TMCI is unable to obtain Google's U.S.-hosted records through Canadian process because it lacks jurisdiction to do so.  Appl. at 11.  This factor also weighs in favor of granting the application.

### 4.   Undue Intrusion or Burden

The fourth *Intel* factor considers whether the requested discovery is "unduly intrusive or burdensome."  *Intel Corp.*, 542 U.S. at 265.  Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  TMCI's requested information is relevant to its claims, as the information sought may prove the exfiltration of TMCI's proprietary information.  *See* Appl. at 12.  TMCI's requested information is also not "unduly intrusive or burdensome" as the subpoena seeks information from a brief time period (May 30, 2024, to June 2, 2024), focuses on the specific host and TMCI data transfer window, and seeks non-content records[3] of Google to corroborate information about the transfer of TMCI's exfiltrated data and

---

[3] Non-content records include "subscriber identifiers, account login/access IP logs, device/browser fingerprints, and transactional/activity metadata."  Spruill Decl. ¶ 6.

information.  *See, e.g.*, *In re Hattori*, Case No. 21-mc-80236-TSH, 2021 WL 4804375, at \*5 (N.D. Cal. Oct. 14, 2021) (finding the requested "discovery of only personal identifying information . . . or information that will lead to the discovery of personal identifying information such as access log for very limited periods of time, which information is stored by Google in the ordinary course of its business" to be narrowly tailored); *In re ex parte Appl. of Ontario Principals' Council*, Case No. 13-mc-80237-LHK-PSG, 2013 WL 6073517, at \*3 (N.D. Cal. Nov. 8, 2013) (subpoena request for documents identifying user's name, contact information, and instant messenger screen names; "websites related to the user;" current account status; and IP addresses was narrowly tailored and not unduly burdensome or intrusive); *In re Barney*, Case No. 22-mc-80154-HSG, 2022 WL 17813142, at \*3 (N.D. Cal. Dec. 19, 2022) (finding the fourth *Intel* factor weighed in favor of granting the subpoenas that only sought IP addresses and were limited to the relevant time period).  TMCI's request is narrowly tailored and is not overly intrusive, and therefore, this factor also weighs in favor of granting the application.

To further alleviate the potential burden, the Court ORDERS that the return date for TMCI's subpoena must be at least 45 days after the date TMCI serves the subpoena.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS TMCI's Section 1782 application.  TMCI may serve the subpoena attached to its application (Appl., Ex. A) once the return date has been amended.  The Court's grant of TMCI's application is without prejudice to any motion to quash that Google or any other appropriate party may wish to file.

**IT IS SO ORDERED.**

Dated: July 7, 2026

Noël Wise
United States District Judge

United States District Court
Northern District of California

8